IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CARLO R. COMPARAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 6:23-cv-71-JDK |
| | § | |
| LT. SHON MCGEE, et al., | § | |
| | § | |
| Defendants. | § | |

**ORDER ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Carlo Ramon Comparan, a pro se prisoner confined within the Texas Department of Criminal Justice (TDCJ), filed this civil rights lawsuit under 42 U.S.C. § 1983. The case was referred to United States Magistrate Judge K. Nicole Mitchell for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636.

**I.**

In his amended complaint, Plaintiff claimed that Defendants violated his constitutional rights through: (1) an allegedly illegal and unreasonable strip search, (2) alleged due process violations in connection with a prison disciplinary proceeding, (3) his placement in administrative segregation, (4) his rejected prison grievances, (5) alleged excessive force from a smoke cannister, and (6) retaliation and conspiracy. Docket No. 29. Defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Docket No. 34.

1

On May 5, 2025, Judge Mitchell issued a Report and Recommendation recommending that Defendants' motion to dismiss be granted and that Plaintiff's lawsuit be dismissed with prejudice for the failure to state a claim upon which relief. Docket No. 40. Plaintiff objected. Docket No. 47.

Where a party timely objects to the Report and Recommendation, the Court reviews the objected-to findings and conclusions of the Magistrate Judge de novo. 28 U.S.C. § 636(b)(1). In conducting a de novo review, the Court examines the entire record and makes an independent assessment under the law. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded on other grounds by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

## II.

Plaintiff makes seven objections to the Report. As explained below, the Court overrules each objection.

### A.

In his first objection, Plaintiff maintains that the strip search performed inside his cell was unreasonable under the Fourth Amendment because it was "carried out for the purposes of harassment and intimation" rather than for a legitimate penological purpose. Docket No. 47 at 2. Plaintiff contends that the presence of his cellmate during the visual-body cavity search further supports the unreasonable nature of the strip search. *Id.*

The Fifth Circuit has stated that although prisoners possess a constitutional right to bodily privacy, the right is "minimal, at best." *Tuft v. Texas*, 410 F. App'x

770, 776 (5th Cir. 2011) (citing *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002)). The Court also highlighted that "strip searches have been repeatedly recognized as an important tool of prison security, and are not *per se* unconstitutional." *McCreary v. Richardson*, 738 F.3d 651, 656 (5th Cir. 2013). Often, jail and prison policies include both strip searches and bodily-cavity searches of prisoners and pre-trial detainees. *See Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 333 (2012) ("Something small might be tucked or taped under an armpit, behind an ear, between the buttocks, in the instep of a foot, or inside the mouth or some other bodily cavity.").

Under the Fourth Amendment, however, strip searches and bodily-cavity searches must be reasonable under all facts and circumstances under which they are performed. *Maxwell v. Almanza*, 2023 WL 6172020, at *3 (5th Cir. Sept. 22, 2023) (citing *Elliot v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994)). Visual bodily cavity searches of prisoners can be constitutionally acceptable under the appropriate circumstances. In this vein, the Fifth Circuit has considered several factors: (1) whether the search was performed by guards of the opposite sex; (2) whether it occurred in public or private; and (3) whether it was unreasonably lengthy. *Parker v. Woods*, 834 F. App'x 92, 95–96 (5th Cir. 2020). The Fifth Circuit, moreover, has explained that courts "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Elliot*, 38 F.3d at 191 (quoting *Bell v. Wolfish,* 441 U.S. 520, 559 (1979)).

Here, as Plaintiff describes it, the visual cavity search was not conducted unreasonably or in a humiliating or degrading manner. Plaintiff claimed that Defendant McGee was looking for contraband during a count and conducted an unreasonable and lengthy visual bodily cavity search—a search far less intrusive than a manual body cavity search—in front of his cellmate of the same-sex and wherein Defendant McGee allegedly ordered Plaintiff to "turn around, bendover [sic] and spread his glutes." But these facts do not indicate an unreasonable strip search under the Fourth Amendment. *See Florence*, 566 U.S. at 333; *see also Maxwell*, 2023 WL 6172020 at *4 (finding manual body cavity search reasonable because it lasted two to three seconds and was performed in the privacy of Maxwell's cell). Under the circumstances, the Court determines that the search was not unduly lengthy.

Though Plaintiff now complains that there was no penological purpose for this visual bodily cavity search, he omits that Defendant McGee discovered contraband inside his own cell during this search, namely, a cellphone under his own bed. The strip search was a routine visual body search for contraband. *See Brown v. Blaine*, 185 F. App'x. 166, 170 (3rd Cir. 2006), *cert. denied*, 549 U.S 1064 (2006) (no constitutional violation where inmate was required to lift his penis and testicles, spread his buttocks, and then place his hands on his head and sweep his mouth with his fingers); *Thompson v. Souza*, 111 F.3d 694, 700 (9th Cir. 1997) (holding that a visual strip search in which a prisoner was required to place his fingers inside his mouth after manipulating his genitalia was constitutional because it was neither exaggerated nor excessive). And Defendant McGee's finding of Plaintiff's contraband

4

during the search further supports a finding of reasonableness of the search. *See Maxwell*, 2023 WL 6172020, at *4 (When an officer officers' search revealed contraband, "though not dispositive," it "adds an explanation point to our conclusion" that the search was reasonable.). This objection is overruled.

### B.

Next, Plaintiff asserts that Judge Mitchell erroneously determined that his injuries were de minimis. He argues that the use of chemical agents, without penological justification, may constitute cruel and unusual punishment. Docket No. 47 at 2–3 (citing *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999)). Plaintiff notes that he "described exposure to a smoke grenade, burning of skin, breathing complications, and denial of medical care." *Id.* at 3.

Plaintiff's injuries, as he described them in his amended complaint and objection, do not establish liability under § 1983. Although Plaintiff is correct that the use of chemical agents on a prisoner without penological justification may constitute a violation of the Eighth Amendment, it is well-settled that to prevail under section 1983—even when claiming excessive force—a prisoner must have suffered more than a de minimis injury. *See* 42 U.S.C. § 1997(e); *see also Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (explaining that a prisoner need not show significant injury but must have suffered at least some injury); *Lee v. Wilson*, 237 F. App'x 965, 966 (5th Cir. 2007) (affirming the dismissal of a prisoner's excessive force claim and holding that the prisoner's split lip was a de minimis injury and the conduct was not repugnant to the conscience of mankind).

5

Here, even if a smoke grenade was thrown into Plaintiff's cell without penological justification, Plaintiff's alleged injuries do not establish an Eighth Amendment violation. Temporary painful burning and the brief loss of breath are de minimis injuries stemming from a gas grenade. *See Bradshaw v. Unknown Lieutenant*, 48 F. App'x 106 (5th Cir. 2002) (affirming district court's dismissal as to an excessive force claim wherein prisoner complained of "burning eyes, and skin for approximately 24 hours, twitching of his eyes, blurred vision, irritations of his nose and throat, blistering of his skin, rapid heartbeat, mental anguish, shock and fear as a result of the use of mace," finding that the prisoner "has not shown that he suffered more than a de minimis injury"). Additionally, Plaintiff's claim that he "was denied medical care," continues to be conclusory and without specifics on objection. This second objection is overruled.

## C.

Next, Plaintiff contends that the Court incorrectly found that "temporal proximity alone cannot establish causation" in rejecting this claim. Plaintiff insists that he presented a "sustained pattern of retaliatory conduct"—which included verbal threats, false disciplinary charges, and a punitive transfer. Docket No. 47 at 3.

The Magistrate Judge correctly determined that his allegations failed to state a claim upon which relief may be granted. Federal courts view inmates' retaliation claims "with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1164–66 (5th Cir. 1995). The Fifth Circuit recently found that in order to succeed on a retaliation claim, a prisoner must establish "(1) a specific constitutional right, (2) the

6

defendant's intent to retaliate against the prisoner for his . . . exercise of that right, (3) a retaliatory adverse act, and (4) causation." *See Streater v. Davis*, 2022 WL 10362714, at *1 (5th Cir. Oct. 18, 2022) (per curiam) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). To show causation, "an inmate must allege the violation of a constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred." *Ancar v. Robertson*, 2022 WL 1792535, at *3 (5th Cir. June 2, 2022) (quoting *Woods*, 60 F.3d at 1166). The Fifth Circuit has determined that a defendant failed to allege causation when "he fail[s] to allege facts to allow the inference that he was transferred because of his lawsuit." *Streater*, 2022 WL 10362714, at *1.

Here, as the Magistrate Judge found, Plaintiff failed to allege facts that would show he was stripped searched, received his disciplinary case, and then placed in administrative segregation as a result of retaliation. Causation was not established because Plaintiff cannot show that "but for" any retaliation he would not have been searched, received a disciplinary case, or been placed in segregation.

Plaintiff alleged a chronology of events demonstrating: (1) a strip and cell search during a seemingly routine count in which Defendant McGee ultimately found contraband belonging to Plaintiff; (2) a subsequent disciplinary charge and hearing for possession contraband, and (3) placement in administrative segregation as punishment. These chronological events do not establish that absent McGee's alleged misconduct Plaintiff would not have been stripped search during count, received an

7

infraction for the contraband found, and then placed in administrative segregation. Causation cannot be met and therefore the Court overrules the objection.

### D.

Plaintiff further states that he "challenges the imposition of disciplinary sanctions without due process," and argues that the Magistrate Judge's conclusion that his placement in administrative segregation was not atypical and significant is incorrect. Docket No. 47 at 3–4. The Court disagrees.

Plaintiff was briefly placed in administrative segregation for less than one year. Assignment to administrative segregation can implicate a liberty interest only when it is utilized such that it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014); *see also Tate v. Starks*, 44 F. App'x 720, 732–24 (5th Cir. 2011) (noting that extremely restrictive conditions constitute a "crucial exception to the general rule that a prisoner has no liberty interest in his classification").

The Supreme Court has identified three relevant factors when examining the question of whether confinement in segregation is "atypical and significant": (1) the severity of the confinement restrictions; (2) the duration of the confinement in segregation; and (3) whether assignment to segregation has any collateral consequences on the prisoner's sentence. *See Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005); *Bailey v. Fisher*, 647 F. App'x 472, 475–76 (5th Cir. 2016). Courts recognize the severity and duration of restrictions as the two significant or key factors. *Wilkerson*, 774 F.3d at 854; *see also Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) ("In assessing whether disciplinary segregation amounts to a

8

constitutional violation, this court looks to 'the combined import of the duration of the segregative confinement and the conditions endured.'").

Plaintiff's placement in administrative segregation, here, occurred after prison officials discovered contraband in his cell, was not indefinite, and Plaintiff failed to explain how his cell was restrictive, if at all. On objection, Plaintiff describes the conditions as "extreme"; however, he does not describe the conditions of his cell or his specific restrictions, if any. Given that Plaintiff was released from segregation in less than year, such a brief stint in segregation lends credence to a finding that his placement was not atypical and significant. In these ways, he failed to state a claim upon which relief may be granted. This objection is also overruled.

## E.

Plaintiff also objects to the Court's dismissal of his conspiracy claim for lack of specificity. Docket No. 47 at 4. He claims that at the motion-to-dismiss stage he is not required to prove every overt act. But this objection is without merit.

"The elements of civil conspiracy are the following: (1) an actual violation of a right protected under section 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999). Importantly, mere conclusory allegations of a conspiracy, absent reference to material facts, do not state a cause of action under § 1983. *See Marts v. Hines*, 68 F.3d 134, 136 (5th Cir. 1995) (en banc).

Here, Plaintiff's conclusory allegations on objection—that Defendants "acted in concert to retaliate against him for exercising constitutional rights including filing grievances"—is insufficient. Moreover, his conspiracy allegations necessarily fail

9

because he has not identified the violation of a constitutional right. Plaintiff further does not address the Magistrate Judge's finding that employees within the Texas Department of Criminal Justice cannot conspire with themselves. "TDCJ and its employees constitute a 'single legal entity which is incapable of conspiring with itself.'" *Thornton v. Merchant*, 526 F. App'x 385, 388 (5th Cir. 2013) (citing *Benningfield v. City of Hosu.*, 157 F.3d 369, 378 (5th Cir. 1998)). Defendants in this action are or were employed by the Texas Department of Criminal Justice, Docket No. 29 at 3, and thus cannot engage in a conspiracy. This objection is meritless and overruled.

### F.

Plaintiff insists that Defendant Collum's personal involvement as a supervisor was alleged. Docket No. 47 at 4. Specifically, he claims that he "alleged that Collum knowingly allowed McGee to use the L-wing as his investigative wing and took no action to stop the retaliation and unconstitutional treatment." *Id.* This argument fails.

Plaintiff remains unable to allege Defendant Collum's personal involvement with any specificity. Personal involvement is an essential aspect of a section 1983 cause of action. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action." (citing *Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976))). The Fifth Circuit has held that a plaintiff must specify the personal involvement of each defendant in a section 1983 proceeding and "cannot make generalized allegations, nor can he support a claim based on any vicarious liability theory." *See Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir.

1992). In describing "personal involvement," the Supreme Court denoted that "there must be an affirmative link between the incident and some act by the defendant." *Rizzo*, 423 U.S. at 363; *see also Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (explaining that a defendant "must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the [defendant] and the constitutional violation sought to be redressed").

Here, Plaintiff failed to plead Defendant Collum's personal involvement. As the Magistrate Judge found, Plaintiff's contention that Defendant Collum "allows him to have the L-Wing Cellblock as his own investigation wing" does not demonstrate personal involvement in any constitutional violation. Generalized allegations, without specific details connecting the defendant to the constitutional violation, are insufficient. This objection is overruled.

**G.**

Lastly, Plaintiff insists that Defendants are not entitled to qualified immunity because he alleged a constitutional violation. But as noted above and explained in the Report, Plaintiff failed to state claims upon which relief may be granted. *See Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021). He failed to identify any constitutional violation, and Defendants are therefore entitled to qualified immunity.

**III.**

Having conducted a de novo review of the record in this case and the Magistrate Judge's Report, the Court has determined that the Report of the

11

Magistrate Judge is correct, and Plaintiff's objections are without merit. Accordingly, the Court hereby **ADOPTS** the Report of the Magistrate Judge (Docket No. 40) as the opinion of the Court. Plaintiff's objections (Docket No. 47) are **OVERRULED**. The Court, therefore, **ORDERS** that Defendants' motion to dismiss (Docket No. 34) is **GRANTED** and the lawsuit is **DISMISSED** with prejudice for the failure to state a claim upon which relief may be granted. All pending motions are **DENIED**.

**So ordered and signed on this**
**Jul 29, 2025**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE